

21st Floor
1251 Avenue of the Americas
New York, NY 10020-1104

**Katherine M. Bolger**
212.402.4068 tel
212.489.8340 fax

katebolger@dwt.com

September 14, 2018

<u>VIA ECF</u>

The Hon. Margo K. Brodie
United States District Judge
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    Re:    *Coleman v. Home Box Office, Inc., et ano.*, **Case No. 18-cv-03510(MBK)(PK)**

Dear Judge Brodie:

    We represent Defendants Home Box Office, Inc. ("HBO") and HBO Films (together, "Defendants")[1] in the above-referenced matter. In accordance with Rule 3(A) of Your Honor's Individual Practices, we write to request a pre-motion conference in advance of filing a motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). In the Complaint, Plaintiff claims that HBO's telecast of a documentary film entitled "_beware the slenderman" (the "Documentary" or the "Film") that briefly displays an online image of his painting (the "Work") infringes his copyright in the Work.[2] Defendants' motion should be granted because the appearance of the image in the Documentary is a fair use.

    The nearly two-hour documentary focuses on an infamous 2014 crime, in which two Wisconsin girls, Anissa Weier and Morgan Geyser, stabbed their friend Payton "Bella" Leutner nearly to death. The girls admitted responsibility for the stabbing and claimed they did it to appease the shadowy, Internet-based figure known as "Slenderman." The Documentary delves deeply into the online urban legend of Slenderman – and the ever-expanding creative canon of art, video, and writing devoted to him which can be found online. A major theme of the Documentary is that the large volume of Slenderman-themed art, video and literature is easily accessible to impressionable adolescents who frequent the Internet, like Geyser and Weier. The Documentary includes dozens of images of Slenderman found online, which illustrate for the viewer the type of images that attracted the girls before their crime, and that may have inspired them to commit it. The numerous examples of online content featuring Slenderman include YouTube videos and doctored photographs

---

[1] Defendant HBO is a premium television network known for award-winning original movies, documentaries, and television shows. Defendant HBO Films, Inc. (sued here as HBO Films) is a wholly-owned subsidiary of Home Box Office, Inc. and is not involved in the production or distribution of documentary films, but joins in this letter request.

[2] Defendants will provide a courtesy DVD of the Documentary to chambers in connection with this letter.

Anchorage | New York | Seattle
Bellevue | Portland | Shanghai
Los Angeles | San Francisco | Washington, D.C.

www.dwt.com

September 14, 2018
Page 2

purporting to capture frightening Slenderman encounters, to artistic renderings and animations of the character as a sympathetic savior of lonely children and himself a victim of childhood bullying.

Shortly before it concludes, the film discloses that the girls had fervently hoped to be together "always" but were being detained separately without any contact with each other while awaiting trial for their crime. Juxtaposed with this information is a visual montage of works depicting the girls and the crime, showing how it too has become an object of Internet allure. The montage ends with the brief display of an Internet image of Plaintiff's painting – depicting Slenderman hovering above Weier and Geyser – pointedly as encountered by an unseen individual browsing the Internet. The Internet page containing the image is shown as the camera pulls back, and a cursor closes the page with the click of a mouse. The montage illustrates another central thesis of the film: even as the two girls deal with the repercussions of their crimes in the real world, their own part of the Slenderman story grows online, locking them together forever in their own Internet meme, and potentially inspiring the next impressionable adolescent who encounters these images.

Plaintiff claims that this use of an Internet image of his painting violates his copyright, and he further claims that by including the image of his work among other images that he characterizes as "Internet fan art," Defendants are liable for contributory infringement. Both claims must be dismissed.

*First*, Plaintiff's claim for copyright infringement fails because the Film's incorporation of an Internet image of the Work into a visual collage of Internet images within a documentary exploring and critiquing the online "Slenderman" meme and its destructive effect on vulnerable adolescents is highly transformative and a paradigmatic example of fair use. Section 107 of the Copyright Act sets out four non-exclusive factors that courts must consider in determining whether a particular use of a copyrighted work is a fair use: (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted. Applying these factors, there is no question that the Documentary makes a fair use of Plaintiff's painting.

Regarding the first factor, courts have routinely found the use of art, photos, and film clips in a documentary to be transformative where, as here, the works are used to show examples of a particular genre, subject, or phenomenon. *See, e.g., Hofheinz v. Discovery Commc'ns, Inc.*, No. 00 CIV. 3802 (HB), 2001 WL 1111970, at *4 (S.D.N.Y. Sept. 20, 2001) (sci-fi film clips used in documentary examining alien visitation themes); *Hofheinz v. AMC Productions, Inc.,* 147 F.Supp.2d 127, 137 (E.D.N.Y. 2001) (movie clips in documentary about the monster-movie genre); *Hofheinz v. A & E Television Networks*, 146 F. Supp. 2d 442, 443 (S.D.N.Y. 2001) (film clips used in actor biography); *Video-Cinema Films, Inc. v. Cable News Network, Inc.*, No. 98 CIV. 7128IBSJ), 2001 WL 1518264, at *6 (S.D.N.Y. Nov. 28, 2001); (film clips in video obituary) *Monster Commc'ns, Inc. v. Turner Broad. Sys., Inc*., 935 F. Supp. 490 (S.D.N.Y. 1996) (historical footage used in sports biography). Here, the montage is a visual commentary on the way that the girls' story grows online together with the ever-developing online mythology of Slenderman, perversely achieving on the Internet a togetherness that the girls sought but can no longer accomplish in real life. Further, by panning back to show that the image of Plaintiff's painting is being encountered online by an unseen individual, the Documentary also uses the Internet image of the painting as a "historical artifact" that "enhanc[es]" its expressive purpose, showing that this

September 14, 2018
Page 3

imagery can be encountered online by at-risk youth like Weier and Geyser.  It follows from this highly transformative use of the image of the painting that the first factor of the fair-use test strongly favors Defendants.  *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605 (2d Cir. 2006) (use of images of Grateful Dead posters in an "illustrated timeline" of the band's career was a transformative use).  *See also Lennon v. Premise Media Corp.*, 556 F. Supp. 2d 310, 322–23 (S.D.N.Y. 2008) (use of excerpt from John Lennon's song "Imagine" in documentary-style film, accompanied by a sequence of images, to underscore a thematic point in the film about the role of religion in public life and to criticize Lennon's views was transformative).

Ironically, Plaintiff's painting itself features third-party material – the girls' publicly–distributed mugshots and the Slenderman character which is copyrighted and owned by someone else.  Because Plaintiff's painting is substantially derivative, and the Documentary's use transformative, the second factor is neutral at most and carries little weight.  *Bill Graham*, 448 F.3d at 612.  Similarly, the third factor weighs in Defendants' favor because showing the entirety of the Internet image of the painting – and panning the camera back to show that it is being encountered on the Internet – is essential to the transformative use in the Documentary.  *Id.* at 613 (third factor did not weigh against fair use notwithstanding use of entire images, since the use was "tailored to further its transformative purpose").  Finally, the fourth factor weighs in favor of Defendants because Plaintiff has not alleged any cognizable market harm.  Plaintiff has not asserted that the market for his original painting was harmed by the Film.  He also cannot rely on an allegedly lost licensing fee where, as here, the use is transformative.  *Leibovitz v. Paramount Pictures Corp.*, 137 F.3d 109, 117 (2d Cir. 1998).  Plaintiff's allegation that the Documentary depicts it as "Internet fan art" (which cannot be found in the Film), and his nonsensical assertion that by using it without a license, Defendants suggest that others can do so as well, also are legally insufficient.  *Hofheinz II*, 147 F. Supp. 2d at 140 (rejecting plaintiff's market-harm argument that she would "lose the licensing value of her copyrighted works" by a finding of fair use).

*Second*, Plaintiff fails to state a claim for contributory infringement because he has not identified any direct infringement by a third party – a necessary element of the claim.  *See, e.g., Faulkner v. Nat'l Geographic Enters, Inc.,* 409 F.3d 26, 40 (2d Cir. 2005) ("[T]here can be no contributory infringement absent actual infringement."); *Wolk v. Kodak Imaging Network, Inc.,* 840 F. Supp. 2d 724, 750 (S.D.N.Y. 2012) ("[T]o hold a defendant secondarily liable someone else must have directly infringed on the copyright holder's rights.").  "A mere allegation that the defendant provided [a] third party with the opportunity to engage in wrongful conduct would not even be enough to survive a motion to dismiss."  *Quiroga v. Fall River Music, Inc.*, No. 93 CIV. 3914 (RPP), 1998 WL 851574, at *37 (S.D.N.Y. Dec. 7, 1998).

Based on the foregoing, Defendants respectfully request that the Court schedule a Pre-Motion Conference and/or grant them leave to file a motion to dismiss pursuant to Rule 12(b)(6).

Respectfully submitted,

/s/ Katherine M. Bolger
Katherine M. Bolger